## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MARK THOMPSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:24-cv-11693-IT |
| ) | |
| UNITED NETWORK FOR ORGAN ) | (Leave to file granted on October 10, 2024) |
| SHARING and MASSACHUSETTS ) | |
| GENERAL BRIGHAM INCORPORATED, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## UNOS'S REPLY IN FURTHER SUPPORT OF ITS
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# I.    Plaintiff fails to plausibly allege actionable discrimination by UNOS.

The crux of Plaintiff's claims is that a race-conscious coefficient was used to calculate his eGFR score, increasing it above the baseline required to begin accruing time on the waitlist. *See*, *e.g.*, Compl. ¶ 21. As set forth in UNOS's Motion to Dismiss (Mot. at 6–9), however, Plaintiff's own allegations establish that *the Defendant Transplant Hospitals*, not UNOS, calculated Plaintiff's eGFR score using a race-conscious formula and declined to refer him to the waitlist because of the result. *See* Compl. ¶¶ 41, 77. And contrary to Plaintiff's bald assertion that UNOS's policy encouraged and expressly allowed the Defendant Transplant Hospitals to use race-conscious eGFR formulas (*id.* ¶¶ 50, 60), the Prior OPTN Kidney Policy—which UNOS submitted as Exhibit 1 to its Motion to Dismiss—was completely silent on that issue. *See* Dkt. 12-1. And Plaintiff's argument that UNOS discriminated against him by considering his eGFR scores, which the Defendant Transplant Hospitals calculated and submitted on his behalf, misses the mark. UNOS does that with the eGFR scores of all patients, regardless of their race. Compl. ¶ 41. Thus, UNOS did not treat Plaintiff differently from any other patient.

Faced with these truths, Plaintiff presents four primary arguments in his Opposition. *First*, Plaintiff argues that the Complaint plausibly alleges UNOS "us[ed] the race-based coefficient"— "a racial classification"—to artificially inflate the eGFR scores of Plaintiff and other Black patients. Opp'n at 11–13; *see also id.* at 17–18 (asserting that "UNOS engaged in disparate treatment by way of an expressly discriminatory policy" of "apply[ing]" the race-conscious coefficient). But, again, Plaintiff's own allegations establish that the *Defendant Transplant Hospitals*, not UNOS, applied the race-conscious coefficient when calculating Plaintiff's eGFR score. *See* Compl. ¶¶ 41 ("When a new patient is added to the waitlist, *the referring hospital* enters the patient's . . . eGFR scores." (emphasis added)), 77 (alleging that the "transplant hospitals . . . appl[ied] the race-based coefficient").

1

UNOS's processing of eGFR scores submitted by transplant hospitals without regard to the formula used to calculate the scores is not disparate treatment, because it treats all patients the same. And the possibility that this practice may have adversely affected Plaintiff because the Defendant Transplant Hospitals may have independently elected to use a race-conscious eGFR equation does not change the nature of UNOS's conduct. *See, e.g.*, *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1116 (N.D. Cal. 2011) (dismissing disparate-treatment claim because the plaintiff did not allege that the defendant "treated her differently because of her disability" and "the essence of [her] complaint" was that defendant "treat[s] all users in the same . . . automated way"). Succinctly stated, the allegations in the Complaint do not establish disparate treatment.[1]

*Second*, Plaintiff argues that the Complaint plausibly alleges UNOS knew that the Defendant Transplant Hospitals had calculated his eGFR score using a race-conscious coefficient, and failed to prevent them from doing so. Opp'n at 14. But "Title VI prohibits [recipients of federal financial assistance] from engaging in unlawful discrimination[;] it does not require them to implement specific policies or to respond to discrimination in a particular manner." *See Doe v. L.A. Unified Sch. Dist.*, 2016 WL 4238636, at *4 (C.D. Cal. Aug. 8, 2016). Thus, even if UNOS knew that a transplant hospital had elected to use an eGFR test with a race-conscious modifier, Title VI does not require UNOS to prevent transplant hospitals from using such a test. *See Thompson v. Vista View, LLC*, 2009 WL 10688422, at *4 (S.D. W. Va. Jan. 22, 2009) (rejecting the argument that one defendant had a "duty to prevent the other['s] discriminatory conduct").

---

[1] Plaintiff's lengthy discussion of strict scrutiny (Opp'n at 12–14) is beside the point because Plaintiff has failed to plausibly allege that UNOS classified patients by their race. Indeed, the case law cited by Plaintiff supports UNOS's position because the cases involved policies that expressly considered race. *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 206–18 (2023) (admissions policy that explicitly considered an applicant's race); *Wessmann v. Gittens*, 160 F.3d 790, 793, 808–09 (1st Cir. 1998) (same).

*Third*, Plaintiff argues that UNOS "encouraged" and "expressly allow[ed]" the Defendant Transplant Hospitals to use race-conscious eGFR formulas. Opp'n at 14. But Plaintiff does not and cannot dispute that the Prior OPTN Kidney Policy—the policy to which UNOS adhered—is silent on that issue.[2] *See* Dkt. 12-1. Putting aside Plaintiff's unsupported, conclusory allegations, the Complaint does not contain any facts that even plausibly suggest that UNOS required, encouraged, or expressly allowed hospitals to use a race-conscious eGFR test.[3]

*Fourth*, Plaintiff argues that the Complaint plausibly alleges an agency relationship between UNOS and the Defendant Transplant Hospitals. Opp'n at 16–17. As a threshold matter, however, a plaintiff cannot maintain a Title VI claim under a vicarious-liability theory. *See StandWithUs Ctr. for Legal Just. v. Mass. Inst. of Tech.*, 2024 WL 3596916, at *4 n.8 (D. Mass. July 30, 2024) ("[V]icarious liability is unavailable under Title VI."). More fundamentally, Plaintiff has failed to allege facts establishing that UNOS and the Defendant Transplant Hospitals agreed that the Defendant Transplant Hospitals would act on UNOS's behalf when measuring Plaintiff's kidney function and determining whether to refer him to the national transplant waitlist on the basis of the result—in other words, *when providing medical treatment to Plaintiff. See Driscoll v. McCann*, 505 F. Supp. 3d 32, 37 (D. Mass. 2020) ("[A]gency results from the

---

[2] Plaintiff argues that the Court cannot consider this policy because "the Complaint makes no reference to nor relies upon" it. Opp'n at 15. That is patently false. *See* Compl. ¶¶ 50 ("UNOS's *policy* encouraged and allowed for use of the race-based coefficient[.]"), 60 ("UNOS's *policy* . . . expressly allow[ed] for use of the race-based coefficient[.]"), 77 (referring to "UNOS adopting, encouraging, and implementing the race-based coefficient *as policy*") (emphases added to all).

[3] Relatedly, Plaintiff argues that "UNOS may not present the Court with a single document and ask the Court to conclusively determine that it did not discriminate against Black patients." Opp'n at 15. But UNOS is simply pointing to the Prior OPTN Kidney Policy—which is silent as to eGFR equations—and the Complaint's lack of factual allegations about *how* UNOS otherwise encouraged or expressly allowed use of a race-conscious eGFR formula and is asking the Court to determine that Plaintiff has failed to plausibly allege that UNOS intentionally discriminated against him—an appropriate request on a motion to dismiss.

manifestation of consent by one person to another that the other shall act on his behalf and subject to his control."). Plaintiff asserts that "UNOS expressly authorized the transplant hospitals to act as its agents" (Opp'n at 16), but that allegation appears nowhere in the Complaint. Moreover, contrary to Plaintiff's unsupported assertion, UNOS does not "requir[e] [transplant hospitals] to register patients" on the waitlist (*id.*); rather, this is a medical decision made by transplant hospitals and their patients. The Complaint does not contain any factual allegations that even plausibly suggest a contrary conclusion. Moreover, the fact that OPTN policy identifies listing criteria and requires patients to be referred to the waitlist by transplant hospitals (Compl. ¶¶ 39–41) does not establish that transplant hospitals are UNOS's agents when providing medical treatment to their patients. Put differently, UNOS and the transplant hospitals play distinctly separate roles in the organ transplant process.[4]

## II.    Plaintiff fails to plausibly allege that UNOS receives a government subsidy.

To state a viable Title VI claim against UNOS, Plaintiff must assert facts that show UNOS received a subsidy from the federal government, as opposed to compensation for services. Mot. at 9–11. In response, Plaintiff attempts to lower the pleading standard, relying on pre-*Iqbal*, out-of-circuit authority to assert that "a 'naked' allegation" that the defendant receives federal financial assistance is sufficient. Opp'n at 18. Not so. *Iqbal* requires Plaintiff to plead facts establishing each element of the claim; there is no exception for complicated elements, as Plaintiff suggests. *See Faculty, Alumni, & Students Opposed to Racial Preferences v. Harvard L. Rev. Ass'n*, 2019 WL 3754023, at *8 (D. Mass. Aug. 8, 2019) (concluding that the plaintiffs' "conclusory description of

---

[4] As a last-ditch effort to save his deficient Complaint, Plaintiff adds a footnote suggesting that a deliberate-indifference claim "could also be reasonably inferred" from his Complaint. Opp'n at 17 n.5. But elsewhere in his brief, Plaintiff affirmatively disclaims that he asserts deliberate indifference. *Id.* at 16 ("Plaintiff alleges intentional discrimination, not deliberate indifference.").

[the defendant] as a program or activity that receives Federal financial assistance" was insufficient).

Plaintiff fails to satisfy this standard. He concedes that UNOS is a private company that administers the national transplant waitlist under a contract with the federal government. *See* Compl. ¶¶ 36–38. Notwithstanding this admission, Plaintiff asks the Court to infer that the contractual payments UNOS receives somehow constitute subsidies as opposed to contractual compensation. Plaintiff argues that because the federal government "itself does not need transplant services," UNOS's administration of the waitlist is not a service provided for the federal government. Opp'n at 18. But Plaintiff cites no authority for the proposition that payments for services under a federal contract are subsidies unless the contractor provides the services directly to the government. Plaintiff's lack of citation on this point is not surprising, given the fact that numerous cases across the country essentially have rejected Plaintiff's position. *See Jarno v. Lewis*, 256 F. Supp. 2d 499, 503–04 (E.D. Va. 2003) (payments to jail for housing inmates not subsidy despite the fact that the government itself did not need to be housed); *Est. of Boyland v. Young*, 242 F. Supp. 3d 24, 29 (D.D.C. 2017) (payments to claims administrator not subsidy despite the fact that government itself was not filing claims); *Phillips v. Goldsteins' Rosenberg's Raphael-Sachs, Inc.*, 2013 WL 6506170, at *4 (E.D. Pa. Dec. 10, 2013) (payments to funeral homes for providing services for deceased veterans not subsidy despite the fact that the government itself did not need such services).[5] Plaintiff attempts to distinguish UNOS's cited authority by arguing that

---

[5] *Moreno v. Consolidated Rail Corp.*, 99 F.3d 782 (6th Cir. 1996), Plaintiff's cited authority, is readily distinguishable. There, the defendant received government funds to improve railroad crossings that the defendant owned and would have otherwise had to pay for out of its own pocket—the essence of a subsidy. *Id.* at 787. Here, unlike there, the Complaint lacks facts that suggest UNOS "owns" the national transplant waitlist and would have to pay to maintain it absent government funds.

it concerns services related to "federal programs" or historic responsibilities. Opp'n at 20. Notably, however, Plaintiff does not cite any case law in support of his position.

Plaintiff's reference to the text of NOTA and statements in the legislative record concerning appropriations for the OPTN is equally unavailing. As Plaintiff acknowledges, there is a distinction between the OPTN and UNOS, Compl. ¶¶ 36–38, and general statements about appropriation of funding for the OPTN do not establish that payments made to UNOS under the OPTN contract are subsidies, rather than compensation for the contractual services UNOS provides in connection with the administration of the national transplant waitlist.

### III.     Plaintiff failed to timely file an MCAD complaint.

Plaintiff's MPAL claim cannot stand because Plaintiff fails to allege that he filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD") and waited the required 90 days. The private right of action to enforce MPAL is found in chapter 151B, which provides that "[a]ny person claiming to be aggrieved" by a MPAL violation "may, *at the expiration of ninety days after the filing of a complaint with the commission*, or sooner if a commissioner assents in writing . . . bring a civil action[.]" Mass. Gen. Laws ch. 151B, § 9 (emphasis added). Thus, "[a]ctions brought under the [MPAL] are subject [to the] nonwaiveable requirement that a plaintiff file a complaint with the MCAD." *Griffiths v. Town of Hanover*, 2012 WL 3637791, at *4 (D. Mass. Aug. 21, 2012). The contrary interpretations in Plaintiff's cases (Opp'n at 22) conflict with the plain text of the statute, and the Court should reject them. *See In re Liquidation of Am. Mut. Liab. Ins. Co.*, 802 N.E.2d 555, 563 (Mass. 2004) ("We are constrained to follow the plain language of a statute" unless it "contravene[s] the Legislature's clear intent.").

### IV.     Plaintiff lacks standing to seek injunctive relief.

Plaintiff seeks to enjoin UNOS from engaging in racial discrimination and asserts that he will suffer future injuries unless he is awarded another kidney. Opp'n at 23. Plaintiff admits,

however, that transplant hospitals can no longer use a race-conscious eGFR test and that he has received a wait-time modification. Compl. ¶¶ 22–25. Given these facts, Plaintiff cannot establish the required nexus between UNOS's *ongoing* conduct and his claimed future injuries.

**V.    Plaintiff's request for punitive damages should be stricken.**

Plaintiff concedes that punitive damages are not available under Title VI. Opp'n at 22. And he has failed to sufficiently allege that UNOS engaged in outrageous or egregious conduct, which is required to recover punitive damages under the MPAL. *Joyce v. Town of Dennis*, 720 F.3d 12, 22 (1st Cir. 2013). Thus, Plaintiff's request for punitive damages should be stricken.

*        *        *

For the reasons set forth above, UNOS respectfully requests that the Court dismiss each of the claims asserted against UNOS, *with prejudice*.

Dated:    October 21, 2024                    Respectfully submitted,

                                              UNITED NETWORK FOR ORGAN SHARING

                                              */s/ Dallin R. Wilson*
                                              Katherine Perrelli (BBO No. 549820)
                                              Dallin R. Wilson (BBO No. 676662)
                                              SEYFARTH SHAW LLP
                                              Two Seaport Lane, Suite 1200
                                              Boston, MA 02210
                                              (617) 946-4817
                                              kperrelli@seyfarth.com
                                              drwilson@seyfarth.com

                                              Daniel M. Blouin (admitted *pro hac vice*)
                                              Thomas G. Weber (admitted *pro hac vice*)
                                              WINSTON & STRAWN LLP
                                              35 W. Wacker Drive
                                              Chicago, IL 60601-9703
                                              Tel.: (312) 558-5600
                                              Fax: (312) 558-5700
                                              dblouin@winston.com
                                              tgweber@winston.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF and paper copies will be sent to those indicated as non-registered participants on October 21, 2024.

Dated:  October 21, 2024                 */s/ Dallin R. Wilson*
                                          Dallin R. Wilson