UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARK THOMPSON, | ) |
| | ) |
|     PLAINTIFF, | ) |
| | ) |
| V. | ) |
| | ) C.A. NO.: 1:24-CV-11693-IT |
| | ) |
| UNITED NETWORK FOR ORGAN SHARING, | ) |
| AND MASSACHUSETTS GENERAL BRIGHAM | ) |
| INCORPORATED, | ) |
| | ) |
|     DEFENDANTS. | ) |

### DEFENDANT MASSACHUSETTS GENERAL BRIGHAM INCORPORATED'S, REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Massachusetts General Brigham Incorporated ("MGB" or "Defendant") submits this Reply in Support of Its Motion to Dismiss ("Reply"). Plaintiff Mark Thompson ("Plaintiff") has not pled and cannot show a concrete and particularized injury caused by Defendant MGB and redressable by the Court. As such, Plaintiff lacks Article III standing and both his Title VI Claim and MPAL Claim are subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) as a matter of law. Plaintiff's Title VI Claim and MPAL Claim are also subject to dismissal as a matter of law insofar as they improperly seek injunctive relief with respect to MGB. Plaintiff's MPAL Claim must also be dismissed because Plaintiff failed to timely file an MCAD claim and exhaust his administrative remedies prior to commencing this action. For the foregoing reasons, MGB's Motion to Dismiss should be allowed, and all Plaintiff's claims against MGB should be dismissed with prejudice.

## I. PLAINTIFF'S TITLE VI CLAIM AND MPAL CLAIM ARE SUBJECT TO DISMISSAL AS A MATTER OF LAW BECAUSE MGB DID NOT PERFORM ANY eGFR CALCULATION CAUSALLY RELEVANT TO HIS UNOS "WAIT TIME" ACCRUAL, AND THUS THERE IS NO INJURY IN FACT CAUSED BY MGB SUFFICIENT FOR ARTICLE III STANDING.

In order to have Article III standing, a plaintiff must show that the defendant actually caused him some *personal* injury in fact:

> Article III confines the federal judicial power to the resolution of "Cases" and "Controversies." For there to be a case or controversy under Article III, the plaintiff must have a " 'personal stake' " in the case—in other words, standing. *Raines*, 521 U. S., at 819, 117 S. Ct. 2312, 138 L. Ed. 2d 849. To demonstrate their personal stake, plaintiffs must be able to sufficiently answer the question: " 'What's it to you?' " Scalia, The Doctrine of Standing as an Essential Element of the Separation of Powers, 17 Suffolk U. L. Rev. 881, 882 (1983).
>
> To answer that question in a way sufficient to establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief. *Lujan* v. *Defenders of Wildlife*, 504 U. S. 555, 560-561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). If "the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *Casillas* v. *Madison Avenue Assocs., Inc.*, 926 F. 3d 329, 333 (CA7 2019) (Barrett, J.).

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 423. The injury in fact alleged to have been caused by the defendant must be "particularized", affecting the plaintiff in a "personal and individualized" way; a "generalized grievance" shared in equal measure by a larger class of citizens will not suffice, nor will strong ideological or moral objections to a policy:

> An injury in fact must be "concrete," meaning that it must be real and not abstract. See *TransUnion*, 594 U. S., at 424, 141 S. Ct. 2190, 210 L. Ed. 2d 568. The injury also must be particularized; the injury must affect "the plaintiff in a personal and individual way" and not be a generalized grievance. *Lujan*, 504 U. S., at 560, n. 1, 112 S. Ct. 2130, 119 L. Ed. 2d 351.
>
> […]
>
> By requiring the plaintiff to show an injury in fact, Article III standing screens out plaintiffs who might have only a general legal, moral, ideological, or policy

objection to a particular government action. For example, a citizen does not have standing to challenge a government regulation simply because the plaintiff believes that the government is acting illegally. See *Valley Forge*, 454 U. S., at 473, 487, 102 S. Ct. 752, 70 L. Ed. 2d 700. A citizen may not sue based only on an "asserted right to have the Government act in accordance with law." *Allen*, 468 U. S., at 754, 104 S. Ct. 3315, 82 L. Ed. 2d 556; *Schlesinger*, 418 U. S., at 225-227, 94 S. Ct. 2925, 41 L. Ed. 2d 706. Nor may citizens sue merely because their legal objection is accompanied by a strong moral, ideological, or policy objection to a government action. See *Valley Forge*, 454 U. S., at 473, 102 S. Ct. 752, 70 L. Ed. 2d 700.

*FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381. Equally important, an injury in fact only confers Article III standing if the defendant *actually caused* said injury:

> The causation requirement is central to Article III standing. Like the injury in fact requirement, the causation requirement screens out plaintiffs who were not injured *by the defendant's action*. Without the causation requirement, courts would be "virtually continuing monitors of the wisdom and soundness" of government action. *Allen*, 468 U. S., at 760, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (quotation marks omitted).

*Id.* at 383-384. (emphasis supplied.)

Plaintiff's Title VI Claim and MPAL Claim are subject to dismissal with respect to MGB because Plaintiff has failed to establish an injury-in-fact **_caused by MGB_** sufficient for Article III standing. Plaintiff's Title VI Claim and MPAL Claim turn on an allegation that the use of a race-based coefficient to calculate his eGFR score was discriminatory. Dkt. 1, **Compl.** at ¶¶ 47-56, 77, 86. Plaintiff claims that he was harmed specifically by the calculation of his eGFR in September 2016; Plaintiff alleges that but for the application of the race-based coefficient to that eGFR calculation, his eGFR score would have qualified him to be added to UNOS' waitlist and begin accruing wait time on September 12, 2016. **Id.** at ¶¶ 24, 64. Instead, Plaintiff was referred to UNOS' kidney transplant waitlist and began accruing wait time continuously in July of 2017, when he qualified for addition to the waitlist (apart from any eGFR calculation) based on his beginning dialysis. **Id.** at ¶¶ 7, 25, 45, 66. Plaintiff's alleged damages all stem from his allegation that the 2016 eGFR calculation deprived him of approximately ten months of UNOS wait time accrual between September 2016 and July 2017. **Id.** at ¶¶ 64, 66.

3

Plaintiff ***does not allege that MGB performed the September 2016 eGFR calculation which allegedly deprived him of wait time accrual between September 2016 and July 2017***; indeed, Plaintiff never alleges that MGB *ever* performed an eGFR calculation for Plaintiff that affected his UNOS wait time accrual in any respect. **Id.** at ¶¶ 1-88. On the contrary, Plaintiff admits that he did not visit MGB for the first time until November of 2019, *over two years* after he had already been referred to UNOS' kidney transplant waitlist (by some other medical professional or entity that Plaintiff strategically fails to name in his Complaint) and had begun continuously accruing wait time. **Id.** at ¶¶ 7, 17, 25, 66. Given that MGB did not perform the 2016 eGFR calculation at the heart of Plaintiff's claims (or even the Plaintiff's 2017 UNOS wait list referral), Plaintiff plainly cannot show an injury in fact caused by MGB, and thus lacks Article III standing with respect to MGB. Again, as Plaintiff admits in his Complaint, the role of a referring transplant hospital such as MGB is limited to uploading relevant medical data, including eGFR scores, into the UNet software. *Id.* at ¶ 41. Once a referral is completed, it is *UNOS* that maintains the national kidney waitlist via its UNet software, and it is *UNOS*' UNet algorithm that ranks potential matches on the national kidney waiting list. *Id.* at ¶¶ 41-42. The eGFR calculation and the referral were performed by some other undisclosed hospital – not MGB. Furthermore, the Plaintiff has not alleged and cannot plausibly allege that MGB has the *post hoc* ability or authority to compel UNOS to override a patient's wait list position, previously determined by independent third parties, merely because Plaintiff subsequently became a potential candidate for a transplant procedure at MGB. In his Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Opposition"), Plaintiff continues try to avoid this issue by refusing to name (but tacitly acknowledging) that some other entity unrelated to MGB actually performed Plaintiff's eGFR calculation and made his UNOS wait list referral. Plaintiff

attempts to salvage Article III standing by arguing (in direct contradiction to the case law cited *supra*) that a generalized moral/ideological objection to a policy alleged to be discriminatory is sufficient to confer standing even in the absence of a particularized harm to the plaintiff actually caused by the defendant:

> "Mass General, and similarly situated transplant hospitals, applied the race-based coefficient policy adopted, encouraged, and implemented by UNOS directly to those individuals who sought treatment at their facilities. *Id.* ¶¶ 39, 41 47-49, 77. Mass General knowingly inputted and used modified wait times for Black patients in UNOS's UNet software, causing Black patients to be ranked lower for specific donor kidneys than non-Black patients. *Id.* ¶ 77. Moreover, Mass General would not have referred Mr. Thompson, or any other Black patient, to the kidney waitlist until he complied with UNOS's and Mass General's policies requiring a race-adjusted score of less than 20 mL/min for Black patients […]"

Dkt. 35, **Pl. Oppo. to MGB MTD** at pg. 12. Plaintiff's use of the subjunctive is telling. Plaintiff argues that MGB, like other "similarly situated" transplant hospitals, previously used a race-based coefficient in calculating eGFR, so that *if* MGB had actually been the entity that had performed Plaintiff's relevant eGFR calculation then it *would* not have referred Plaintiff to the UNOS waitlist in September 2016, either. Imagining what MGB would have done if it had been Plaintiff's transplant hospital in 2016-2017 is inherently speculative and does not suffice to confer Article III standing.

There is no exception to constitutional injury-in-fact and causation standing requirements for discrimination claims; a plaintiff must show a direct harm caused by the defendant:

> Laufer has described herself as "an advocate on behalf of both [her]self and other similarly situated disabled persons." App. 17a. She admits that, "[a]s a tester, [she] visit[s] hotel online reservation services to ascertain whether they are in compliance with the Americans with Disabilities Act." *Ibid.*
>
> […]
>
> Laufer sues "not to enforce specific legal obligations whose violation works a direct harm" on her, but to force hotels to comply with the Reservation Rule. *Allen* v. *Wright*, 468 U. S. 737, 761, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984).

5

"Vindicating the *public* interest . . . is the function of Congress and the Chief Executive," however, not private plaintiffs. *Lujan*, 504 U. S., at 576, 112 S. Ct. 2130, 119 L. Ed. 2d 351.

*Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 12-13 (J. Thomas, concurring opinion). This insufficiency for standing is all the more glaring when the plaintiff is attempting to hold a defendant liable, not for a discriminatory act of its own, but for the allegedly discriminatory act of some other third party. *See Doe v. Los Angeles Unified Sch. Dist.*, No. 216-CV-00305-CAS(JEMx), 2016 WL 4238636, at *4 (C.D. Cal. Aug. 8, 2016) ("[While] Title VI prohibits [recipients of federal financial assistance] from engaging in unlawful discrimination, it does not require them to implement specific policies or to respond to discrimination in a particular manner"); *Thompson v. Vista View, LLC*, No. 2:06-CV-00585, 2009 WL 10688422, at *4 (S.D. W.Va. Jan. 22, 2009) (rejecting the plaintiff's argument that Title VI "imposed a duty on [one defendant] to prevent the other defendants' alleged discriminatory conduct"). The fact that an alleged injury results from the independent action of some third party not before the court "may make it substantially more difficult to meet the minimum requirement of Art. III….". *Allen v. Wright*, 468 U.S. 737, 757-758.[1]

Equally inapposite are Plaintiff's references to affirmative action case law. Affirmative action cases do not abolish the constitutional requirement of Article III standing. They still require that the plaintiff have suffered a concrete harm (conclusive denial of an admissions or a contract bid), or at least be "able and ready" to apply in the face of affirmative action policy that remains in place. *Cotter v. City of Boston*, 323 F.3d 160, 167 (1st Cir. 2003). In any event,

---

[1] The Court in *Allen* did not find Article III standing sufficient to sue the IRS for how it enforced regulations against private entities; Plaintiff in this matter is attempting to sue a private entity for the acts of other, unrelated private entities it has no governmental power to regulate (indeed, *UNOS* sets transplant policy, not MGB) – far more attenuated than the situation contemplated in *Allen* and far outside the Constitutional bounds of standing.

6

Plaintiff is not suing the entity that performed the allegedly discriminatory act at the heart of his claims; an analogous affirmative action case would be one where the student applied to Yale, was denied admission, and then sued *Harvard* because it had substantially the same affirmative action policy in place at the time of his or her admissions denial. Such a plaintiff clearly would lack standing to sue Harvard.[2]

Plaintiff's Complaint and Opposition ignore the critical fact that some other transplant hospital made the eGFR calculation at issue, and used it to refer Plaintiff to the UNOS wait list. MGB did not. Speculative arguments about what MGB might have done (but which plaintiffs implicitly concede, as to this particular plaintiff, it did not) do not suffice to confer Article III standing, and thus Plaintiff's Title VI Claim and MPAL Claim are subject to dismissal with respect to MGB as a matter of law.

## II. PLAINTIFF'S CLAIM FOR INJUNCTIVE RELIEF WITH RESPECT TO MGB IS IMPROPER AS A MATTER OF LAW.

Plaintiff seeks "preliminary and permanent injunctions enjoining and restraining UNOS and Mass General, their agents, employees, representatives, partners, joint venturers, and/or anyone acting on behalf of, or in concert with, UNOS or the Mass General from engaging in the above-described racial discrimination." **Compl**., Prayer for Relief at ¶ 1. As MGB has already

---

[2] Plaintiff's claims are also subject to dismissal on the Article III standing-related grounds of mootness, given that the policy objected to by Plaintiff (use of a race-based coefficient in calculating eGFR) is no longer in place. A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287, 120 S. Ct. 1382, 146 L. Ed. 2d 265 (2000) (quoting *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S. Ct. 1379, 59 L. Ed. 2d 642 (1979)). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91, 133 S. Ct. 721, 184 L. Ed. 2d 553 (2013) (quotations and citation omitted). Plaintiff does not have recourse to the voluntary cessation mootness exception, given that UNOS as operator of the nation's transplant database no longer permits use of the race-based coefficient in eGFR calculations as a matter of policy. **Compl**. at ¶¶ 22, 40 58-62. Given the UNOS policy change, MGB could not revert to use of the race-based coefficient and continue to operate as a transplant hospital. "The [voluntary cessation] exception, to be invoked, also requires some reasonable expectation of recurrences of the challenged conduct." *Fitzgerald v. City of Portland*, 2014 U.S. Dist. LEXIS 152492, *10 (internal citation omitted).

articulated at length, the use of the race-based coefficient in calculating eGFR has already been prohibited by MGB and UNOS as a matter of policy, and it is improper as a matter of law for Plaintiff to seek injunctive relief when the challenged policy is no longer in place. Nothing in Plaintiff's Opposition rebuts this basic principle.

**III. PLAINTIFF'S MPAL CLAIM MUST BE DISMISSED DUE TO A LACK OF SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFF FAILED TO TIMELY FILE AN MCAD COMPLAINT AND EXHAUST HIS ADMINISTRATIVE REMEDIES PRIOR TO COMMENCING THIS ACTION.**

"In opposing a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the plaintiff bears the burden of establishing that the Court has jurisdiction." *Marradi v. K&W Realty Inv. LLC*, 212 F. Supp. 3d 239, 242, quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). This Court lacks subject matter jurisdiction over Plaintiff's MPAL Claim, because Plaintiff failed to exhaust his administrative remedies prior to commencing this action. "Resort to the courts is not available for a complaint of discrimination within the jurisdiction of the MCAD unless the person claiming to have been the object of unlawful discrimination first makes a timely complaint to that agency." *Cherella v. Pheonix Technologies, Ltd.*, 32 Mass. App. Ct. 919, 919 (1992) *quoting Melley v. Gillette Corp.,* 19 Mass. App. Ct. 511, 512-513 (1985) (citations omitted).

The Massachusetts Public Accommodation Law ("MPAL") imposes liability on "[w]hoever makes any distinction, discrimination or restriction," on a prohibited basis (including without limitation race or gender), "relative to the admission of any person to, or his treatment in, any place of public accommodation". M.G.L. c. 272, s. 98. The Massachusetts Supreme Judicial Court has clearly and plainly stated that MPAL has been integrated into M.G.L. c. 151B, with authority in the first instance for MPAL delegated to MCAD's administrative proceedings per the Legislature's intentions. *Currier v. Nat'l Bd. of Med. Examiners*, 462 Mass. 1, 18

(2012) ("With the integration of the statute into c. 151B, the Legislature essentially delegated to the commission the *authority in the first instance* to interpret the statute and determine its scope.") (emphasis added). This was a reiteration of a prior Supreme Judicial Court decision that an MPAL claim could not be considered by the courts before the exhaustion of MCAD remedies. *East Chop Tennis Club v. Massachusetts Com. against Discrimination*, 364 Mass. 444, 448 ("As this summary of the statutory provisions makes clear, the Legislature has established a comprehensive scheme of administrative procedures and remedies which persons appearing before the commission *must follow before seeking relief from the Superior Court*." *Id*. at 453 ("The club has not alleged in its bill any facts which relieve it of the requirement that a plaintiff must pursue the opportunities available for administrative relief before seeking relief from the court."). *Id.* at 587. ("Our court has long followed the rule that *in the absence of a statutory directive to the contrary, the administrative remedies should be exhausted* before resort to the courts.") (internal citations omitted) (emphasis added). The Superior Court case cited by Plaintiff (*Peters v. Boston Properties, Inc.*, 2021 WL 3493907) ignores the Supreme Judicial Court's plain directives in the aforementioned decisions stating that MPAL claims are subject to MCAD administrative exhaustion in the absence of a statutory directive to the contrary, holding instead, without the support of any statutory directive, that only claims listed in M.G.L. c. 151B, §4 are subject to administrative exhaustion. The decision in *Peters* has not been followed by other courts. *Do Corp. v. Town of Stoughton*, 2013 U.S. Dist. LEXIS 172199 (D. Mass. Dec. 6, 2013); *Griffiths v. Town of Hanover*, 2012 WL 3637791, at *4 (D. Mass. Aug. 21, 2012); *Ryan v. UMass Memorial*, 2024 U.S. Dist. LEXIS 61738, at *7 (requiring notice to MCAD for suit governed by § 98); *Manning v. Whole Foods Mkt. Grp., Inc.*, No. 21-cv-10833-ADB, 2022 U.S. Dist. LEXIS 11135, at *13-15.

The statutory prerequisite of filing a complaint with MCAD must be completed within six months of the occurrence of the discriminatory event. M.G.L. c. 151B, s. 5, *see also Carter v. Commissioner of Correction*, 43 Mass. App. Ct. 212, 217 (1997); *Tardanico v. Aetna Life & Cas. Co.*, 41 Mass. App. Ct. 443, 444 (1996). If the plaintiff does not satisfy this statutory prerequisite it is a bar to a claim for discrimination. *Powers v. H.B. Smith Company*, 42 Mass. App. Ct. 657, 667 (1997) (applying this rule to a claim pursuant to M.G.L. c. 151B). Therefore, a court may dismiss a complaint if the statutory prerequisite is not satisfied. *Charland v. Muzi Motors, Inc.,* 417 Mass. 580, 586 (1994) (where the court held that failure to satisfy the statutory prerequisites of c. 151B precludes actions based on M.G.L. c. 93, ss. 102, 103.).

Plaintiff pleads that he first became aware of the alleged discrimination in August 2023. **Compl**. at ¶ 24. Plaintiff did not file an MCAD complaint within six months of August 2023, or at any time thereafter. As such, his MPAL claim is subject to dismissal with prejudice.

## V.     CONCLUSION.

Plaintiff lacks Article III standing with respect to MGB, and both his Title VI Claim and MPAL Claim are subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) as a matter of law. Plaintiff's Title VI Claim and MPAL Claim are also subject to dismissal as a matter of law insofar as they improperly seek injunctive relief with respect to MGB. Plaintiff's MPAL Claim must also be dismissed because Plaintiff failed to timely file an MCAD claim and exhaust his administrative remedies prior to commencing this action. For the foregoing reasons, MGB's Motion to Dismiss should be allowed, and all Plaintiff's claims against MGB should be dismissed with prejudice.

**DEFENDANT
MASS GENERAL BRIGHAM
INCORPORATED
By Its Attorneys**

*/s/ Bradford E. Curtis*

**Richard J. Riley, BBO #420610
Bradford E. Curtis, BBO #685833
MURPHY & RILEY, P.C.
100 Franklin Street, Suite 500
Boston, MA  02110
(617) 423-3700
Email: rriley@murphyriley.com
           bcurtis@murphyriley.com**

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the Electronic Case Filing System, will be sent electronically to the registered participants as indicated on the Notice of Electronic Filing (NEF) and that a paper copy shall be served upon those indicated as non-registered participants on November 11, 2024.

*/s/ Bradford E. Curtis*

Bradford E. Curtis