UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MARK THOMPSON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 1:24-cv-11693-IT |
| UNITED NETWORK FOR ORGAN SHARING and MASSACHUSETTS GENERAL BRIGHAM INCORPORATED, | * * * | |
| | * | |
| Defendants. | * | |

MEMORANDUM AND ORDER

September 15, 2025

Pending before the court is Defendant Massachusetts General Brigham Incorporated's ("Massachusetts General Brigham") Motion to Dismiss [Doc. No. 24] Plaintiff Mark Thompson's claims against it under Title VI of the Civil Rights Act and Massachusetts General Laws c. 272, § 98 based on alleged racial discrimination in the administration of the national kidney transplant waiting list. For the reasons set forth below, Massachusetts General Brigham's Motion [Doc. No. 24] is GRANTED.

**I.      Factual Background as Alleged in Plaintiff's Complaint**

    A.     *The National Kidney Transplant Waitlist*

The court incorporates the factual background set forth in the Memorandum and Order [Doc. No. 39] addressing Defendant United Network for Organ Sharing's ("UNOS") Motion to Dismiss [Doc. No. 11]. To summarize, in 1984, Congress passed the National Organ Transplant Act, creating the Organ Procurement and Transplantation Network ("OPTN"), which was tasked with maintaining a national registry for organ matching. Compl. ¶ 36 [Doc. No. 1]; see also 42

U.S.C. § 274(a)–(b). UNOS operates the OPTN and manages the national kidney transplant waitlist. Compl. ¶¶ 36–37 [Doc. No. 1].

UNOS does not allow kidney disease patients to apply directly for inclusion on the kidney waitlist. Id. ¶ 38. To be placed on the national kidney transplant waitlist, patients must first visit one of over 200 transplant hospitals and receive a referral from their physician. Id. ¶ 39.

The kidney waitlist is maintained using UNOS software called UNet. Id. ¶ 41. A referring transplant hospital adds a new patient to the waitlist by entering the patient's name and relevant medical information, including estimated glomerular filtration rate ("eGFR") scores, into the UNet software. Id. The UNet software includes an algorithm that uses wait time as a significant factor in ranking patients for donor kidneys. Id. ¶ 43. For decades, a race-based coefficient was applied to eGFR scores for Black patients seeking kidney transplants, overstating their kidney function by 16–18%. Id. ¶ 47. The race-based coefficient led to many Black kidney disease patients never qualifying for wait time based on eGFR score, and instead having their addition to the waitlist delayed until the start of dialysis, which is recommended when kidney function falls below 15 ml/min. Id. ¶ 49.

On January 5, 2023, UNOS announced a new policy requiring donor hospitals to notify patients that Black Americans will be considered for wait time adjustments where the race-based coefficient delayed their accrual of wait time, to investigate which patients are eligible for a wait time adjustment, to request any adjustments with UNOS by January 3, 2024, and to notify patients of their status. Id. ¶ 62.

      B.    *Defendant Massachusetts General Brigham*

Massachusetts General Brigham is a kidney transplant hospital that refers patients to UNOS's kidney waitlist. Id. ¶ 39. Hospitals like Massachusetts General Brigham must agree to

be bound by UNOS's published policies and procedures. Id. ¶ 40. When a new patient is referred to the waitlist, the referring transplant hospital, such as Massachusetts General Brigham, enters the patient's name and relevant medical information, including eGFR scores, into UNet. Id. ¶ 41. Massachusetts General Brigham receives financial assistance from the federal government and its programs, which funds both patient care and related operations. Id. ¶ 76.

    C.    *Plaintiff Mark Thompson*

Plaintiff Mark Thompson is Black, id. ¶ 3, and resides in Massachusetts, id. ¶ 29.

Thompson was diagnosed with polycystic kidney disease in or about 2007 or 2008. Id. ¶ 6. In July 2017, Thompson's kidney disease worsened to the point where he was forced to begin dialysis. Id. ¶ 7. Thompson was first added to the kidney waitlist when he began dialysis. Id. Absent application of the race-based coefficient, however, he should have been added based on his eGFR score ten months earlier on September 12, 2016. Id. ¶ 24.

Thompson first visited Massachusetts General Brigham on or about November 2019 for a kidney transplant evaluation. Id. ¶ 17. Massachusetts General Brigham obtained copies of Thompson's earlier medical records on or about this time. Id. ¶ 17. Massachusetts General Brigham did not advise UNOS of the eGFR score from September 2016. Id. ¶ 65.

On April 2, 2021, Thompson had to undergo a surgical procedure to remove both of his kidneys. Id. ¶ 18. On or about this time, it was discovered that both of his kidneys had become cancerous while he was waiting for a donor kidney. Id. Because of his cancer diagnosis, Thompson is listed as "inactive" on the UNOS transplant list for five years. Id. ¶ 19.

In August 2023, after UNOS instructed donor hospitals to notify Black candidates of its policy change and investigate whether Black members of their waitlists were eligible for a wait-

time modification, Massachusetts General Brigham notified Thompson that he was entitled to a transplant wait time adjustment. Id. ¶ 24.

Thompson remains inactive on the waitlist until at least 2026 because of his cancer diagnosis. Id. ¶¶ 19, 25. Because Thompson is inactive until 2026, he will not be considered for a kidney with the appropriate amount of wait time until approximately a decade after he first should have qualified for the national kidney waitlist. Id. ¶ 27.

## II.     Plaintiff's Claims Against Massachusetts General Brigham

Thompson asserts claims against UNOS for violation of Title VI of the Civil Rights Act of 1964 and violation of M.G.L. c. 272, § 98, which makes unlawful racial discrimination in places of public accommodation. Id. ¶¶ 71–88.

## III.    Standard of Review

Rule 12(b)(1) is "[t]he proper vehicle for challenging a court's subject matter jurisdiction." Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362 (1st Cir. 2001). Federal courts are courts of limited jurisdiction, so federal jurisdiction is never presumed. Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). The party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. Id. At the pleading stage, the court should treat all well-pleaded facts as true and provide the plaintiff the benefit of all reasonable inferences. Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009). Dismissal is appropriate only when the facts alleged in the complaint, taken as true, do not support a finding of federal subject matter jurisdiction. Id.

A challenge to the court's subject matter jurisdiction must generally be addressed before addressing the merits of a case. Acosta-Ramirez v. Banco Popular de P.R., 712 F.3d 14, 18 (1st Cir. 2013).

### IV. Discussion

Massachusetts General Brigham argues that Thompson's claims against it should be dismissed under Rule 12(b)(1) because he has not alleged an injury in fact caused by Massachusetts General Brigham that is sufficient to establish Article III standing. Mem. ISO Mot. to Dismiss ("MGB Mem.") 7 [Doc. No. 25]. Thompson responds that he suffered an injury traceable to Massachusetts General Brigham because it "used a race-based-coefficient-impacted eGFR score in its care for Mr. Thompson, delaying his accrual of wait time on the national kidney waitlist." Opp. 11 [Doc. No. 35].

Standing is rooted in Article III of the Constitution, which confines federal courts to the adjudication of actual "cases" and "controversies." See U.S. Const. art. III, § 2, cl. 1; Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). Standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016), as revised (May 24, 2016) (quoting Lujan, 504 U.S. at 560-61). "The standing inquiry is claim-specific: a plaintiff must have standing to bring each and every claim that [he] asserts." Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012) (citing Pagán v. Calderón, 448 F.3d 16, 26 (1st Cir. 2006)). Where the question of standing is based on the pleadings, "the plaintiff bears the burden of establishing sufficient factual matter to plausibly demonstrate his standing to bring the action." Hochendoner v. Genzyme Corp., 823 F.3d 724, 731 (1st Cir. 2016).

#### A. *Injury in Fact*

To establish standing, "[t]he injury alleged must be . . . 'distinct and palpable,' . . . not 'abstract' or 'conjectural' or 'hypothetical[.]'" Allen v. Wright, 468 U.S. 737, 751 (1984)

abrogated on other grounds, Lexmark Intern., Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014) (internal citations omitted). The Supreme Court has "repeatedly emphasized[]" that "discrimination itself, by perpetuating 'archaic and stereotypic notions' or by stigmatizing members of the disfavored group as 'innately inferior' . . . can cause serious noneconomic injuries to those persons who are personally denied equal treatment solely because of their membership in a disfavored group." Heckler v. Mathews, 465 U.S. 728, 739–40 & n.7 (1984) (quoting Mississippi University for Women v. Hogan, 458 U.S. 718, 725 (1982) and collecting cases). Stigmatizing injury caused by racial discrimination "is one of the most serious consequences" of racial discrimination "and is sufficient in some circumstances to support standing." Allen, 468 U.S. at 755. "[S]uch injury accords a basis for standing only to 'those persons who are personally denied equal treatment' by the challenged discriminatory conduct." Id. (quoting Heckler, 465 U.S. at 739–740).

  Thompson has sufficiently alleged that he was denied equal treatment via application of the race-based eGFR co-efficient. He alleges that patients begin accruing wait time on the kidney transplant waitlist when they meet one of two requirements: the patient's eGFR falls below 20 mL/min or the patient begins dialysis. Compl. ¶ 45 [Doc. No. 1]. Further, Black patients on the waitlist did not accrue wait time when their unadjusted eGFR scores fell below 20 mL/min because the race-based coefficient artificially inflated their scores above that threshold. Id. ¶ 48. And Thompson has alleged that the race-based eGFR adjustment was applied to him such that his eGFR score artificially exceeded 20 mL/min, id. ¶ 65, that he never qualified to accrue wait time by eGFR score, id. ¶ 49, and that he was notified that he was entitled to a wait time adjustment after the race-based coefficient was no longer used, id. ¶ 24. Where Thompson was notified that he was entitled to an adjustment after the race-based coefficient was abandoned, it is

6

reasonable to infer that he would have qualified to accrue wait time sooner, and thus would have been considered for a donor kidney in the same manner as non-Black patients, had the race-based coefficient not been applied to him. This is unequal treatment sufficient to satisfy the injury-in-fact requirement. See Allen, 468 U.S. at 755; cf. Regents of Univ. of Cal. v. Bakke, 438 U.S. 265, 281 n.14 (1978) (concluding plaintiff had standing where he was denied opportunity to compete for all available spots in medical school class).

    B.    *Traceability*

The traceability element "requires the plaintiff to show a sufficiently direct causal connection between the challenged action and the identified harm." Katz, 672 F.3d at 71. "Because the opposing party must be the source of the harm, causation is absent if the injury stems from the independent action of a third party." Id. 71–72. Consequently, "[t]he injury may be indirect, but the complaint must indicate that the injury is indeed fairly traceable to the defendant's acts or omissions." Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 261 (1977) (internal citation omitted).

Thompson does not sufficiently allege a causal connection between Massachusetts General Brigham's conduct and his alleged injury. Thompson began dialysis July 2017, and he was first added to the kidney waitlist at this time. Compl. ¶ 7 [Doc. No. 1]. However, Thompson does not allege that it was Massachusetts General Brigham that referred him to the waitlist. To the contrary, Thompson alleges that he first visited Massachusetts General Brigham in November 2019, over two years after his referral. Id. ¶ 17. This allegation undermines an inference that Massachusetts General Brigham employed UNOS's race-based coefficient in relation to Thompson's candidacy for a transplant kidney and that the unequal treatment he suffered is traceable to conduct by Massachusetts General Brigham.

7

Thompson argues that his injury is traceable to Massachusetts General Brigham because "it partnered with UNOS in enforcing the . . . policy[] under which [Thompson] was forced to compete on unequal terms with non-Black kidney disease patients for a donor kidney." Opp. 14 [Doc. No. 35] (emphasis omitted). However, Massachusetts General Brigham's alleged role in enforcing UNOS's policy as to other patients does not state a claim that Massachusetts General Brigham is a source of Thompson's harm.

Thompson does allege that, when Thompson first visited Massachusetts General Brigham in November of 2019, Massachusetts General Brigham "should have reviewed" a test result showing that he should have been added to the waitlist in September 2016 and that Massachusetts General Brigham failed to "notif[y] UNOS that Mr. Thompson qualified to begin accruing wait time in September of 2016." Compl. ¶ 24 [Doc. No. 1]. However, as explained above, Thompson has not alleged that Massachusetts General Brigham was his referring hospital. Instead, Massachusetts General Brigham first saw Thompson and obtained his medical records two years after his referral, when Thompson was already on the wait list because he had started dialysis. See id. ¶ 17. Where Thompson has alleged that a patient's referring hospital is responsible for entering the patient's eGFR score, id. ¶ 41, and that UNOS's software calculates wait time accrual using that information, see id. ¶¶ 41–42, 50, Thompson has not plausibly alleged that the unequal treatment he suffered—late referral to the waitlist in 2017—is fairly traceable Massachusetts General Brigham's failure to notify UNOS of his 2016 test result in 2019.

In sum, Thompson has alleged unequal treatment in his referral to the kidney waitlist sufficient to constitute an injury in fact via UNOS's policy to allow and encourage race-based eGFR score adjustments and his referring hospital's application of that policy to him. However,

8

where he has not alleged that Massachusetts General Brigham was his referring hospital, Thompson has not alleged a "causal connection between [Massachusetts General Brigham's] challenged action[s]," i.e. its general enforcement of UNOS policy and failure to notify UNOS that Thompson should have been referred to the waitlist earlier by his referring hospital, "and the identified harm." Katz, 672 F.3d at 71. Consequently, Thompson lacks standing to pursue his claims against Massachusetts General Brigham.

## V. Conclusion

For the foregoing reasons, Massachusetts General Brigham's Motion to Dismiss [Doc. No. 24] is GRANTED.

IT IS SO ORDERED.

September 15, 2025                    /s/Indira Talwani
                                      United States District Judge