UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
DEON SANTOS,                                    )
              Plaintiff,                        )
                                                )
      v.                                        ) Civil Action No.:  1:24-CV-11692-IT
                                                )
UNITED NETWORK FOR ORGAN SHARING; )
TUFTS MEDICAL CENTER; and                       )
MASSACHUSETTS GENERAL BRIGHAM                   )
INCORPORATED                                    )
              Defendants.                       )
_____)
MARK THOMPSON,                                  )
              Plaintiff,                        )
                                                )
      v.                                        ) Civil Action No.:  1:24-CV-11693-IT
                                                )
UNITED NETWORK FOR ORGAN SHARING; )
and MASSACHUSETTS GENERAL                        )
BRIGHAM INCORPORATED                            )
              Defendants.                       )
_____)

**<u>DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO AMEND
TO ASSERT CLASS ACTION CLAIMS</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    OVERVIEW …………………………………………………………………………………………...1

II.   FACTUAL BACKGROUND………………………………………………………………………2

    A.  The Plaintiffs choose to file individual lawsuits……………………………………2

    B.  Despite purportedly learning new information, the Plaintiffs wait

       months before moving to amend…………………………………………………...3

III.  ARGUMENT………………………………………………………………………..…………………5

    A.  Legal Standard………………………………………………………………………………6

    B.  Plaintiffs' approximately 16-month delay is undue………………..……………7

        i.    The Plaintiffs knew or should have known that they could

           have filed a class action in June 2024………………………………….....8

        ii.   Plaintiffs' seven-month delay following discovery of the

           "new evidence" is unjustified under First Circuit precedent…………..12

    C.  Permitting the Plaintiffs to overhaul this case and transform it into

       a class action would cause the Defendants undue prejudice…….……………12

    D.  Plaintiffs' proposed class claims will be shown to be futile………………………13

IV.  CONCLUSION……………………………………………………………………………………15

## TABLE OF AUTHORITIES

**CASES**                                                                         **PAGE**

*ACA Fin. Guar. Corp. v. Advest, Inc.*,
    512 F.3d 46 (1st Cir. 2008)……………………………………………………..8

*Acosta-Mestre v. Hilton Int'l of Puerto Rico, Inc.*,
    156 F.3d 49 (1st Cir. 1998)…………………………………………………...7, 8, 12

*BlueRadios, Inc. v. Hamilton, Brook, Smith & Reynolds, P.C.*,
    No. 21-cv-10488-DJC, 2024 WL 4892591 (D. Mass. Jan. 24, 2024)….………11

*Chapple v. Fahnestock & Co.*,
    03-CV-4989 (NGG)(JMA) 2005 WL 8157058 (E.D.N.Y. Sept. 15, 2005)……...…11

*Coll. of Dental Surgeons of P.R. v. Conn. Gen, Life Ins. Co.*,
    585 F.3d 33 (1st Cir. 2009)………………………………………………………14

*El Dia, Inc. v. Rossello*,
    30 F. Supp. 2d 160 (D.P.R. 1998)………………………………………………13

*Foman v. Davis*,
    371 U.S. 178 (1962)…………………………………………………….....6, 14

*Glassman v. Computervision Corp.*,
    90 F.3d 617 (1st Cir. 1996)………………………………………..………14

*Grant v. News Grp. Boston, Inc.*,
    55 F.3d 1 (1st Cir. 1995)……………………………………..………………..8

*In re Lombardo*,
    755 F.3d 1 (1st Cir. 2014)……………………………………………………7

*Invest Almaz v. Temple-Inland Forest Prods. Corp.*,
    243 F.3d 57 (1st Cir. 2001)……………………………………………………..7

*Kay v. N.H. Dem. Party*,
    821 F.2d 31 (1st Cir. 1987)………………………………………………5-6, 12

*Leavitt v. IDEXX Labs. Inc.*,
    No. 2:23-cv-00273-NT, 2025 WL 1866178 (D. Me. July 7, 2025)……………...…13

*McCarthy v. Slade Assocs., Inc.*,
    463 Mass. 181 (Mass. 2012)……………………………………………………11

## <u>TABLE OF AUTHORIES CONTINUED</u>

*Palmer v. Champion Mortg.*,
    465 F.3d 24 (1st Cir. 2006)…………………………………………………...…7

*Randall v. United Network for Organ Sharing*,
    2:23-cv-02576 (C.D. Cal.)……………………………………………………4, 5, 10

*Romulus v. CVS Pharmacy, Inc.*,
    321 F.R.D. 464 (D. Mass. 2017)……………………………………………14-15

*Rowe v. United Network for Organ Sharing*,
    2:24-c-05022 (C.D. Cal.)………………………………………………………5

*Ryan v. Newark Group, Inc.*,
    No. 4:22-cv-40089-MRG, 2024 WL 4815478 (D. Mass. Nov. 18, 2024)………...13

*Steir v. Girl Scouts of the USA*,
    383 F.3d 7 (1st Cir. 2004)……………………………………….……6, 7, 12-13

*Stepanischen v. Merchs. Despatch Transp. Corp.*,
    722 F.2d 922 (1st Cir. 1983)…………………………………………………7

*United States ex rel. Hagerty v. Cyberonics, Inc.*,
    146 F. Supp. 3d 337 (D. Mass. 2015)………………………………...6, 7, 8

*Villanueva v. United States*,
    662 F.3d 124 (1st Cir. 2011)………………………………………..………6, 12

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)…………………………………………………...14

*Welch v. United Network for Organ Sharing*,
    3:24-cv-00422 (M.D. Tenn.)……………………………………………...4, 9

## <u>RULES</u>

Fed. R. Civ. Pro. 15(a)…………………………………………………………6

Fed. R. Civ. P. 23(a)…………………………………………………………14

Fed. R. Civ. P. 23(b)……………………………………………………...14

NOW COME the Defendants, United Network for Organ Sharing ("UNOS"), Tufts Medical Center ("Tufts"), and Massachusetts General Brigham Incorporated ("MGB"), requesting that this honorable Court DENY the Plaintiffs' request for leave to amend the pleadings to bring class action claims against UNOS and Tufts.[1]  Doing so approximately 16 months after deciding to file individual lawsuits, when they knew or should have known that a class claim was possible, constitutes undue delay.  Moreover, such a request is unduly prejudicial to the Defendants because of the accompanying burdens in expanding discovery and altering litigation strategy.  Lastly, any class action complaint would be futile.

### I.  Overview.

In June 2024, the Plaintiffs made the tactical choice to file two separate lawsuits. They chose to do so despite alleging that the same policy affected both Plaintiffs, and according to them, affected many other Black kidney patients.  As the months passed, the Plaintiffs continued to prosecute both suits separately.  Dispositive briefing occurred. Now—approximately 16 months since the suits were filed—with discovery beginning, they move to add class action claims, but only against two of the three Defendants.

---

[1]  While the arguments in support of their motion speak directly to UNOS and Tufts only, it is far from clear whether Plaintiffs intend to include other plaintiffs or defendants, including Massachusetts General Brigham ("MGB"), in a future amended pleading. Even if, as Plaintiff has indicated, Plaintiff is not seeking to add MGB as a class action defendant, the transformation of this case into a class action would nevertheless significantly and negatively affect MGB as a defendant within the transformed case, subjecting MGB to the same prejudicial impacts—as would be the class action defendants—namely increased discovery costs, delayed progress of the case including delays in discovery and postponement of trial.  MGB therefore has joined Tufts and UNOS in this Opposition and urges that the Court **DENY** the Plaintiffs' motion to amend the Complaint.

Justice requires that their motion be denied. It would be unfair to permit the Plaintiffs to alter their tactics, especially because they had sufficient information to allege a class action originally. It would be unjust to force the Defendants to change their strategy and delay resolution of these cases. The Defendants deserve to resolve these cases as the Plaintiffs chose to start them approximately 16 months ago.

## II.    Factual background.

### A. The Plaintiffs choose to file individual lawsuits.

On June 28, 2024, the Plaintiffs commenced two separate lawsuits. *Santos ECF No. 1; Thompson ECF No. 1.* Both complaints stem from the same alleged discriminatory practice, the use of the race-based coefficient. *Compare Santos Compl. generally with Thompson Compl. generally.* Both allege that "[f]or more than two decades, UNOS and its approved, partner transplant hospitals used what is known as the race-based coefficient to artificially increase the observed kidney function (eGFR) scores for Black kidney disease patients." *Santos Compl. at par. 1; Thompson Compl. at par. 1.* They also allege that using the race-based coefficient "harmed all Black Americans waiting for a kidney." *Santos Compl. at par. 3; Thompson Compl. at par. 3.* Santos's complaint also alleges by using the race-based coefficient, the Defendants "taint[ed] Mr. Santos's—and countless other Black patients'—eGFR scores." *Santos's Compl. at par. 16.* Both characterize the race-based coefficient as "junk science" not supported by "any valid scientific studies." *Id. at par. 48; Thompson Compl. at par. 52.* They allege that "[t]his practice led to many Black kidney disease patients never qualifying for wait time by eGFR score." *Santos Compl. at par. 45; Thompson Compl. at par. 49.* Again, they allege that "[u]se of the race-based coefficient seriously diminishes Black patients' chances of

receiving a donor kidney." *Santos Compl. at par. 50; Thompson Compl. at par. 54.* Both go on to assert that "[t]he failure to receive donor kidneys has caused significant harm to Black Americans." *Santos Compl. at par. 52; Thompson Compl. at par. 56.* Despite these contentions that using the race-based coefficient harmed numerous Black kidney patients, the Plaintiffs and counsel chose to file the suits as separate and individual actions. *See generally Santos Compl.; Thompson Compl.*

**B. Despite purportedly learning new information, the Plaintiffs wait months before moving to amend.**

The parties briefed motions to dismiss. *See, e.g., Santos ECF Nos. 11-12, 24-25; Thompson ECF Nos. 11-12, 24-25.* While the motions were pending, Plaintiffs' counsel purportedly learned additional information while litigating near-identical lawsuits in other jurisdictions. *See Venezia Decl. par. 3.* According to the Plaintiffs, in January 2025, their counsel learned that UNOS maintained a policy where it would go to transplant hospitals every three years to ensure that they were using the race-based coefficient. *Pl.'s brief at 4.* Plaintiffs also contend that in March 2025, it became public that the author of the study that led to the use of the race-based coefficient misreported certain findings. *Venezia Decl. par. 3.* According to the Plaintiffs, in May 2025, it became public that co-authors of the study failed to read articles supporting a hypothesis of the study. *See Pl.'s brief at 3-4; see also Pl.'s Exhibits 5, 6.*

In the pending motion for leave to file an amended complaint, Plaintiffs' counsel states that he waited numerous months, specifically until September 2025, to alert Santos and Thompson to these "new facts." *See* Venezia Decl. pars. 3, 9. Counsel's stated justification for this delay was that the "new" information was subject to protective orders and, therefore, he was not at liberty to share the information with Santos and Thompson.

3

*See* Pl.'s brief at 7-8.   In making this argument, however, Plaintiffs' counsel fails to acknowledge that pursuant to a written agreement entered into between counsel for Santos and Thompson, and counsel for UNOS, information discovered in one eGFR case could be used in other eGFR cases.  *See* Blouin Decl., Ex. 1 (Agreement Regarding Use of Discovery in eGFR Cases), ECF No. 56-1.   The purpose of the agreement was to streamline discovery and allow the parties to "achieve efficiencies among the eGFR cases."  *Id.* par. 4.   If UNOS produced the evidence, Plaintiffs had UNOS's consent to share with no further action necessary.  *Id.*  If a third-party produced evidence it marked confidential, Plaintiffs' counsel could seek permission from the third-party to share the evidence per each case's protective order.  *Id.*

For example. Plaintiffs' counsel used in *Welch* certain documents the University of Utah produced in *Randall v. United Network for Organ Sharing* (2:23-cv-02576 (C.D. Cal.)), presumably with the University's consent.  *See Welch v. United Network for Organ Sharing*, 3:24-cv-00422 (M.D. Tenn.) (filed under seal February 26, 2025).  Had Counsel sought the University's consent here, he could have shared the same "new" information with Santos and Thompson many months earlier than he did.  *See* ECF No. 63-3 (Exhibit 3) (Greene exhibits Plaintiffs claim were unavailable to them).   Thus, contrary to his assertion, counsel for Santos and Thompson was not precluded from sharing the "new" information with his clients and his stated justification for failing to do so for many months fall flat.  He simply failed to update his clients.

Following the Court's ruling on the Defendants' motion to dismiss, Defendants filed their respective Answers and Affirmative Defenses to Plaintiffs' Original Complaints. *Santos ECF Nos. 49-51; Thompson ECF No. 42.*

Now in October 2025, 16 months after the Plaintiffs chose to assert individual actions, they request that the Court grant them leave to add class claims against UNOS and Tufts.  *See Pl.'s brief p. 1; Santos ECF Nos. 1, 61-62; Thompson ECF Nos. 1, 51-52.*

### III.    Argument.

The Plaintiffs' motion to overhaul two individual actions and begin a class action should be denied.  They engaged in significant delay by waiting approximately 16 months before moving to amend.  Their delay is undue because they had sufficient information to allege a class action back in June 2024.  To that end, it is noteworthy that counsel for Santos and Thompson apparently believed as early as April 2023 that they had sufficient grounds to file class allegations in virtually identical eGFR cases filed in other parts of the country.  Specifically, in April 2023, counsel filed a putative class action complaint against UNOS and another defendant that contained many of the same allegations asserted here. *See Randall*, 2:23-cv-02576 (C.D. Cal.) (filed April 5, 2023, with class allegations).  And again, in June 2024, Plaintiffs' counsel filed a putative class action against UNOS and another defendant alleging class claims regarding use of eGFR test scores with a race-based coefficient.  *See Rowe v. United Network for Organ Sharing*, 2:24-c-05022 (C.D. Cal.) (filed June 13, 2024, with class allegations).   As such, counsel for Randall and Rowe, who are the same attorneys representing Thompson and Santos, either knew or should have known that a class action could have been alleged here.

The stated justification that new information came to light in March and May of 2025 also fails because that information is not essential to assert a class action claim. *See Pl.'s brief at 7*.  Further, even if the Plaintiffs could not have alleged a class action until early 2025, by waiting until October 2025, they still engaged in undue delay.  The First Circuit has concluded that shorter periods of time have constituted undue delay.  *See*

*Kay v. N.H. Dem. Party*, 821 F.2d 31, 34 (1st Cir. 1987) (per curiam) (less than three months); *Villanueva v. United States*, 662 F.3d 124, 127 (1st Cir. 2011) (per curiam) (four months).

In addition, permitting the Plaintiffs to transform these separate individual actions into a class action would be unduly prejudicial to the Defendants. Specifically, the newly alleged class claims most likely will significantly increase discovery. It would also necessitate substantial additional work for the Court and the parties in that the Court would need to rule on a motion to certify a class. It would also require changing Defendants' strategy. All of these burdens would be significant and would negate the year-plus efforts that have already gone into these cases. Justice requires moving forward based on the complaints as they stand and have stood for the past 16 months.

**A. Legal Standard.**

Because the scheduling deadline to add parties had not passed, Rule 15(a) of the Federal Rules of Civil Procedure governs. *See Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004). Under this rule, a party may amend its pleading under specific circumstances. Fed. R. Civ. Pro. 15(a). Outside of those specific circumstances, the rule requires "the opposing party's written consent or the court's leave." Fed. R. Civ. Pro. 15(a)(2); *see also United States ex rel. Hagerty v. Cyberonics, Inc.*, 146 F. Supp. 3d 337, 342 (D. Mass. 2015). "The court should freely give leave when justice so requires." Fed. R. Civ. Pro. 15(a)(2). Regardless, motions to amend can be denied for numerous reasons including, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "In determining whether to grant a motion to

amend, the Court must examine the totality of the circumstances and 'exercise its informed discretion in constructing a balance of pertinent considerations.'" *United States ex rel. Hagerty*, 146 F. Supp. 3d at 342 (quoting *Palmer v. Champion Mortg.*, 465 F.3d 24, 30-31 (1st Cir. 2006)).

**B. Plaintiffs' approximately 16-month delay is undue.**

By waiting approximately 16 months to amend, the Plaintiffs engaged in undue delay. Under First Circuit precedent, undue delay *alone* may be a sufficient reason to deny a motion to amend a pleading. *See, e.g.*, *Acosta-Mestre v. Hilton Int'l of Puerto Rico, Inc.*, 156 F.3d 49, 52 (1st Cir. 1998); *In re Lombardo*, 755 F.3d 1, 3 (1st Cir. 2014). As such, "when considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has at the very least the burden of showing some valid reason for his neglect and delay." *In re Lombardo*, 755 F.3d at 3 (quotations, internal quotations, and brackets omitted) (quoting *Stepanischen v. Merchs. Despatch Transp. Corp.*, 722 F.2d 922, 933 (1st Cir. 1983)). The First Circuit has identified 14 months, 15 months, and 17 months as "considerable time, warranting explanation." *Id.* (quotations omitted). Further, when determining "whether delay is undue, a court will take into account of [sic] what the movant 'knew or should have known and what he did or should have done.'" *Id.* (quoting *Invest Almaz v. Temple-Inland Forest Prods. Corp.*, 243 F.3d 57, 72 (1st Cir. 2001)).

Here, considerable time passed. "Regardless of the context, the longer a plaintiff delays, the more likely the motion to amend will be denied." *Steir*, 383 F.3d at 12. In between the Plaintiffs' separate lawsuits and this motion amend, the Court already received briefing on motions to dismiss and drafted decisions in two separate cases. *See, e.g.*, *Santos ECF Nos. 24-25, 46-47; Thompson ECF Nos. 24-25, 39-40.* "The practice

of waiting to amend a complaint until after the Court has ruled on a motion to dismiss is troublesome, to say the least." *United States ex rel. Hagerty*, 146 F. Supp. 3d at 344; *see also ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 57 (1st Cir. 2008) (affirming denial of leave when Plaintiff's counsel "uncovered 'new' evidence" in a separate proceeding but waited until after a motion to dismiss was decided, "even though they knew what they would add if they amended"). Now, with a discovery deadline set, and resolution of the cases coming closer, the Plaintiffs seek to upend the cases and start over.

### i. The Plaintiffs knew or should have known that they could have filed a class action in June 2024.

From the beginning, Santos's and Thompson's original complaints suggest that Plaintiffs' counsel knew or at least should have known that a class action could have been asserted. Nothing recently uncovered would have prevented the Plaintiffs from filing a class action initially. *See Grant v. News Grp. Boston, Inc.*, 55 F.3d 1, 6 (1st Cir. 1995) (reasoning that the plaintiff "clearly possessed the knowledge" to assert his proposed claims originally even without the uncovered evidence); *Acosta-Mestre*, 156 F.3d at 52 (reasoning that the original complaint suggested that plaintiff's counsel "was aware, or should have been aware" of an additional potential defendant).

The original complaints alleged that use of the race-based coefficient affected many Black kidney patients. *See generally Santos Compl.; Thompson Compl.* For example, they allege that using the race-based coefficient "harmed all Black Americans waiting for a kidney." *Santos Compl. at par. 3; Thompson Compl. at par. 3.* If that is true, the Plaintiffs should have known that a class action could have been brought. And further proof of their knowledge exists. Santos's complaint also alleges by using the race-based coefficient, the Defendants "taint[ed] Mr. Santos's—and countless other Black patients'—

8

eGFR scores." *Santos Compl. at par. 16.* And both Santos and Thompson allege that "[t]his practice led to many Black kidney disease patients never qualifying for wait time by eGFR score." *Santos at par. 45; Thompson at par. 49.* Again, they allege that "[u]se of the race-based coefficient seriously diminishes Black patients' chances of receiving a donor kidney." *Santos Compl. at par. 50; Thompson Compl. at par. 54.* Both also assert that "[t]he failure to receive donor kidneys has caused significant harm to Black Americans." *Santos Compl. at par. 52; Thompson Par. at 56.* Those claims suggest that Plaintiffs knew, or at least should have known, that a class action could have been alleged because they allege that the same complained of practice affected many Black kidney patients in a similar way. But instead, they chose to proceed with individual actions and stuck with that choice for approximately 16 months. They should be required to follow through with that choice.

Plaintiffs attempt to excuse their approximate 16-month delay by claiming that "newly discovered evidence" emerged. *Pl.'s Brief at 7.* The stated reason does not hold water. As explained above, the parties had an agreement to share discovery, and to the extent something was subject to a protective order, Plaintiffs' counsel need only seek the designating parties' consent to disclose that information. *See* Blouin Decl., Ex. 1, ECF No. 56-1. Just as Plaintiffs' counsel used the Greene exhibits in *Welch*, nothing stopped him from doing the same here.

Moreover, the "new" evidence does not support an amendment: the evidence the Plaintiffs cite only supports their pre-existing allegations. It is not so significant that the Plaintiffs were precluded from asserting a class action without it. For example, they claim that such recently unearthed evidence includes "documents concerning the original 1999

study that created the race-based coefficient and follow-up research conducted by Dr. Levey at Tufts." *Pl.'s brief at 7*.   The evidence also included "deposition testimony concerning authors' failure to read articles allegedly supporting their hypothesis that Black people have greater muscle mass." *Id.*  But both complaints already characterized the race-based coefficient as "junk science" not supported by "any valid scientific studies." *Santos Compl. at par. 48; Thompson Compl. at par. 52*.   They already alleged that the study was based "solely on a racial stereotype and flawed studies." *Santos Compl. at par. 2*.   Any evidence regarding any misconduct during the original study is subsumed within the allegation that the study lacked scientific merit.   Such supporting details are not significant enough to justify a 16-month delay.

The same logic applies to the uncovered information that "UNOS policy was to visit transplant hospitals every three years to review records and ensure that for Black patents, [sic] the 'Black value' was entered in UNet." *Pl.'s brief at 7*.   Santos's complaint already alleged that "[f]or more than two decades, UNOS and its approved, partner transplant hospitals used what is known as the race-based coefficient to artificially increase the observed kidney function (eGFR) scores for Black kidney disease patients." *Santos Compl. at par. 1*.   The Thompson complaint makes a similar allegation. *See Thompson Compl. at par. 1*.   That allegation implies that it was used for all Black kidney patients for over 20 years. *See id; Santos Complaint at par. 1*.   A policy of checking every three years to ensure compliance only theoretically buttresses that allegation.   It does not justify a 16-month delay to take two separate individual actions and allege a class action.

Although the Plaintiffs also claim that "additional relevant testimony and a key document in this regard was maintained under seal in *Randall* until October 2, 2025," *Pl.'s*

10

*brief at 4*, by that time, Plaintiffs and their counsel had already discussed the possibility of a class action. *Venezia Decl. at par 9.* As such, the referenced "evidence" was in no way foundational to Plaintiffs' ability to assert class claims.

And Plaintiffs' counsel's failure to update his clients on other case developments is no excuse. By claiming facts were not publicly available, Plaintiffs overlook their agreement regarding use of discovery in eGFR cases. That agreement is clear: "To achieve efficiencies among the eGFR cases, ***Plaintiffs and UNOS agree that any Discovery Material exchanged between Plaintiffs, on the one hand, and UNOS, on the other hand, in any eGFR Case can be used in any other eGFR case***" including Santos's and Thompson's. *See* Blouin Decl. Ex. 1, ECF No. 56-1 (emphasis added).

Even assuming Plaintiffs could not file a class action from the outset, as Mr. Randall did a year before and Mr. Rowe did shortly thereafter, Plaintiffs' counsel could have advised his clients to pursue class claims as discovery progressed in the other eGFR cases. If anything, Plaintiffs had constructive knowledge of these "new" facts, and Plaintiffs' counsel's dilatory communications do not constitute excusable delay. *See Chapple v. Fahnestock & Co.*, 2005 WL 8157058, at *2 (E.D.N.Y. Sept. 15, 2005) (denying leave when plaintiff had constructive notice of a putative class action against the same defendant in another court); *cf. BlueRadios, Inc. v. Hamilton, Brook, Smith & Reynolds, P.C.*, No. 21-cv-10488-DJC, 2024 WL 4892591, at *7 (D. Mass. Jan. 24, 2024) (explaining that counsel's knowledge is "generally imputed to the client" when considering a statute of limitations and the discovery rule (citing *McCarthy v. Slade Assocs., Inc.*, 463 Mass. 181, 196 (Mass. 2012))).

ii.    Plaintiffs' seven-month delay following discovery of the "new evidence" is unjustified under First Circuit precedent.

The First Circuit has concluded that time periods of less than three months qualify as undue delay. *Kay*, 821 F.2d at 34 (concluding that an unexplained delay "of almost three months" justified denying a motion to amend); *Villanueva*, 662 F.3d at 127 (per curiam) (determining that a four-month delay without justification constituted undue delay). Here, even if the Plaintiffs arguably did not have a sufficient basis to include class allegations until March or May 2025, a multi-month gap remains. The Plaintiffs contend that such a period "is not long enough in and of itself to count as 'substantial' and require a justification." *Pl.'s Brief at 8*. That contention is incorrect. Even if the Plaintiffs could not have alleged class claims until uncovering the "new evidence," the lapse in time before moving for leave to amend the complaints constitutes undue delay under First Circuit authority. Therefore, the Plaintiffs' delay is undue. *See Kay*, 821 F.2d at 34; *Villanueva*, 662 F.3d at 127.

C. **Permitting the Plaintiffs to overhaul this case and transform it into a class action would cause the Defendants undue prejudice.**

Plaintiffs' motion, if allowed, would expand the scope of the case to a level that would cause the Defendants undue prejudice. Currently, there are two separate actions. Both actions involve only one plaintiff. One action is against UNOS, Tufts, and MGB. The other is against UNOS and MGB. The Plaintiffs seek a class action against UNOS and Tufts. *Pl.'s brief at 1*. Doing so would substantially change the tenor of the litigation to the detriment of the Defendants.

Undue prejudice can exist if the proposed amendment would require "additional costs, a significant postponement of trial, and a likely major alteration in trial strategy and tactics." *Acosta-Mestre*, 156 F.3d at 52. Also, it "goes without saying" that "injecting a

new theory of relief into the litigation" would prejudice the Defendants. *Steir*, 383 F.3d at 12.

Transforming two separate actions, each involving one plaintiff, into a class action would overhaul the cases—essentially putting all parties and the court back to square one. Discovery would balloon as it would expand to potentially hundreds or even thousands of putative class members. Contrary to the Plaintiffs' assertion that discovery would not be affected because it remains open for over a year, *see Pl.'s brief at 8-9,* granting the pending motion would result in additional discovery, increased complexity and associated costs and delays, including a motion to class certification. Such additional steps add to the Defendants' burden. *See Leavitt v. IDEXX Labs. Inc.*, No. 2:23-cv-00273-NT, 2025 WL 1866178, at *5 (D. Me. July 7, 2025) ("[Plaintiff]'s suggestion that allowing this case to proceed as a class action would lessen [Defendant]'s overall discovery burden does not pass the straight face test."). Relatedly, proceeding with a putative class action almost certainly would delay the existing schedule, including the trial date. *See Ryan v. Newark Group, Inc.*, No. 4:22-cv-40089-MRG, 2024 WL 4815478, at *11 (D. Mass. Nov. 18, 2024) ("Leave to amend should neither expand the scope of discovery nor cause a disruption in the discovery or trial schedule." (quoting *El Dia, Inc. v. Rossello*, 30 F. Supp. 2d 160, 165 (D.P.R. 1998))).

**D. Plaintiffs' proposed class claims will be shown to be futile.**

Plaintiffs' motion to assert class claims should be denied for the independent reason that it is futile.[2] Futility of the amendment is a permissible reason to deny a motion

---

[2] Defendants do not waive, and expressly reserve any and all arguments in opposition to class certification should the Court grant the pending motion for leave to amend the complaint to include class allegations.

to amend. *Foman*, 371 U.S. at 182. "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). "[T]here may be rare situations in which it is obvious from the complaint alone that there cannot a class that would warrant certification." *Coll. of Dental Surgeons of P.R. v. Conn. Gen, Life Ins. Co.*, 585 F.3d 33, 41 n.3 (1st Cir. 2009). This case is one such situation.

Federal Rules of Civil Procedure 23(a) requires that class actions meet four requirements: numerosity, commonality, typicality, and adequate representation. In addition, one of the three options in Rule 23(b) must be met. Fed. R. Civ. P. 23(b). The Supreme Court has concluded that "individualized monetary claims belong in Rule 23(b)(3)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011). Here, the Plaintiffs seek money damages. *See Prayers for Relief, Santos Compl.; Thompson Compl.* Rule 23(b) requires predominance, meaning that "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. Pro. 23(b)(3).

The proposed class claims would require individualized proof such that common issues would not predominate. The subject matter of these allegations is medical treatment, which is personalized by its very nature. Accordingly, litigating such class claims would necessitate a deep dive into each person's medical condition and treatment, as this Court experienced first-hand as it worked through Article III standing issues presented in Defendants' motions to dismiss. *See Romulus v. CVS Pharmacy, Inc.*, 321

F.R.D. 464, 471 (D. Mass. 2017) (concluding that when some questions "require individualized inquiries" predominance is not satisfied).

## IV.    Conclusion

Plaintiffs' motion to amend approximately 16 months after filing separate and individual lawsuits should be denied. Their 16-month delay is undue because they could have alleged a class action back in June 2024. Moreover, even if the earliest they could have moved to amend was May of 2025, Plaintiffs cannot explain away their multi-month delay, which exceeds time periods that the First Circuit has concluded were undue. Allowing the Plaintiffs to allege class claims now would be unduly prejudicial to the Defendants. It would substantially expand discovery, necessitate resolution of class certification issues, and change the Defendants' litigation strategy. These significant burdens would be unfairly prejudicial to Defendants, and should be denied.

For the foregoing reasons, the Plaintiffs' motion to amend their complaints to add class claims should be **DENIED.**

## REQUEST FOR ORAL ARGUMENT

Pursuant to local rule 7.1(d), the Defendants respectfully request oral argument.

The Defendants,
Tufts Medical Center, United Network for Organ Sharing, and
Massachusetts General Brigham Incorporated,
By their Attorneys,


/s/ Mary A. Azzarito

_____
Bernard Guekguezian, BBO #559191
Mary A. Azzarito, BBO #566743
Dominic J. Mazza, BBO# 713405
Adler⎪Cohen⎪Harvey⎪Wakeman⎪Guekguezian, LLP
2 Oliver Street, Suite 1005
Boston, MA  02109
(617) 423-6674
bguekguezian@adlercohen.com
mazzarito@adlercohen.com
dmazza@adlercohen.com
(*Counsel for the Defendant, Tufts Medical Center*)


/s/ Daniel M. Blouin

_____
Daniel M. Blouin (admitted *pro hac vice*)
Thomas G. Weber (admitted *pro hac vice*)
WINSTON & STAWN LLP
300 N. LaSalle Drive
Chicago, IL 60654-3406
Tel.: (312) 558-5600
Fax: (312) 558-5700
dblouin@winston.com
tgweber@winston.com
(*Counsel for the Defendant, United Network for Organ Sharing*)

*/s/ Richard J. Riley*

_____

Richard J. Riley, BBO #420610
Bradford E. Curtis, BBO #685833
MURPHY & RILEY, P.C.
100 Franklin Street, Suite 500
Boston, MA  02110
(617) 423-3700
rriley@murphyriley.com
bcurtis@murphyriley.com
*(Counsel for the Defendant, Massachusetts General
Brigham Incorporated)*

## **CERTIFICATE OF SERVICE**

      I, Daniel M. Blouin, counsel for the defendant, United Network for Organ Sharing, hereby certify that a true copy of the above document will be served electronically to the attorney of record for each party via the ECF system on November 5, 2025.

*/s/ Daniel M. Blouin*

_____

Daniel M. Blouin